**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

CHRISTIAN COUNSELORS FREEDOM ALLIANCE,

Plaintiff,

v.

KEITH ELLISON, in his official capacity as Minnesota Attorney General; LANDYN PRESCOTT-MILES, CHRISTOPHER ANDERSON, BHARATI ACHARYA, RANDY ANDERSON, JACQUELINE BLUEM, SANDY CLARK, DERRICK CRIM, AMY DOLS, DINA WILLIAMS, ROY KAMMER, COREY HARLAND, SARAH SIRIANNI DRIEVER, and RANDY STILLDAY, each in their official capacities as members of the Minnesota Board of Behavioral Health and Therapy; SAMANTHA STREHLO, in her official capacity as Executive Director of the Minnesota Board of Behavioral Health and Therapy; SHONDA CRAFT, THAD SHUNKWILER, ADAM ARNOLD, ANNA CLAVIN, JESSIE EVERTS, CHILAH BROWN, and KATHRYN GRAVES, each in their official capacities as members of the Minnesota Board of Marriage and Family Therapy; and JENNIFER MOHLENHOFF, in her official capacity as Executive Director of the Minnesota Board of Marriage and Family Therapy,

Defendants.

Case No. 26-3780-JMB/JFD

**AMENDED VERIFIED COMPLAINT**

---

Plaintiff Christian Counselors Freedom Alliance ("CCFA"), by and through its undersigned counsel, brings this action under 42 U.S.C. § 1983 against the above-named Defendants in their official capacities, and alleges as follows:

## INTRODUCTION

1. In *Chiles v. Salazar*, the United States Supreme Court held that Colorado's Minor Conversion Therapy Law, Colo. Rev. Stat. § 12-245-202(3.5)(a) discriminates on the basis of viewpoint and is presumptively unconstitutional. *Chiles v. Salazar*, 146 S. Ct. 1010 (2026). Minnesota Statutes, Section 214.078 (the "Counseling Restriction"), is nearly identical to the Colorado law condemned by the Supreme Court in *Chiles*. Like the Colorado law, Minnesota's Counseling Restriction applies to talk therapy—pure speech. On pain of professional discipline up to and including loss of licensure, it bars licensed counselors from engaging in counseling-room conversations aimed at helping minor or vulnerable-adult clients reduce unwanted same-sex attraction or deal with gender dysphoria by living in alignment with their biological sex, even when the client selects those goals. At the same time, the Counseling Restriction expressly permits licensed counselors to engage in counseling-room speech aimed at the opposite goals—affirming same-sex attraction or rejecting one's sex. Accordingly, Minnesota's Counseling Restriction discriminates on the basis of viewpoint in the same manner

as the Colorado law and likewise violates the First Amendment's guarantee of free speech. The Counseling Restriction also impermissibly targets and burdens licensed counselors' religious expression in violation of the First Amendment's guarantee of free exercise, and it is unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause.

2. The Counseling Restriction has chilled and continues to chill the counseling-room speech of the Christian licensed mental health professionals and practitioners who are members of Plaintiff Christian Counselors Freedom Alliance ("CCFA"). The Counseling Restriction prohibits CCFA members from practicing counseling in a manner that comports with the principles of their Christian faith, and it denies young people and vulnerable adults access to Christian counseling that aligns with their self-determined counseling goals. CCFA brings this lawsuit to vindicate the First and Fourteenth Amendment rights of its licensed-counselor members and re-open the counseling-room door to people of faith seeking help.

## JURISDICTION AND VENUE

3. This is a civil rights action brought under 42 U.S.C. § 1983 for prospective declaratory and injunctive relief, challenging Minn. Stat. § 214.078 as applied to talk therapy on the ground that it violates the rights to freedom of speech and religious exercise secured by the First Amendment to the United States

Constitution as incorporated against the States through the Fourteenth Amendment as well as the right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

5. This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Federal Rule of Civil Procedure 65.

6. This Court is authorized to award reasonable attorneys' fees and costs to the prevailing party under 42 U.S.C. § 1988.

7. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b) because all Defendants are officials of the State of Minnesota who perform their official duties in this District, and because a substantial part of the events giving rise to Plaintiff's claim has occurred and continues to occur in this District.

## PARTIES

8. Plaintiff Christian Counselors Freedom Alliance is an unincorporated association of Christian licensed mental health professionals and practitioners located in the State of Minnesota.

9. Defendant Keith Ellison is the Attorney General of the State of Minnesota and is sued in his official capacity. Defendant Ellison, as Attorney General, has direct responsibility for enforcing the Counseling Restriction. Under Minn. Stat. §§ 214.10 and 214.103, the Attorney General's designee investigates complaints of unprofessional conduct against the licensees of health-related licensing boards including the Board of Marriage and Family Therapy and the Board of Behavioral Health and Therapy, represents the boards in attempts at resolution, and prosecutes the contested-case proceedings through which discipline—up to and including revocation of a counselor's license—is imposed for conduct deemed to violate the Counseling Restriction.

10. Defendants Landyn Prescott-Miles, Christopher Anderson, Bharati Acharya, Randy Anderson, Jacqueline Bluem, Sandy Clark, Derrick Crim, Amy Dols, Dina Williams, Roy Kammer, Corey Harland, Sarah Sirianni Driever, and Randy Stillday are the members of the Minnesota Board of Behavioral Health and Therapy and are sued in their official capacities. The Board of Behavioral Health and Therapy is the licensing board authorized under the Counseling Restriction

to impose discipline—including suspension and revocation of a license—on the mental health practitioners and professionals it licenses.

11. Defendant Samantha Strehlo is the Executive Director of the Minnesota Board of Behavioral Health and Therapy and is sued in her official capacity. As Executive Director, Defendant Strehlo has authority under Minn. Stat. § 214.103 to determine whether a complaint alleging a violation of the Counseling Restriction is jurisdictional and warrants investigation, forward such complaints to the Attorney General's designee and, after consultation with the Attorney General's designee and with the concurrence of a second board member, initiate contested-case proceedings that may result in disciplinary action.

12. Defendants Shonda Craft, Thad Shunkwiler, Adam Arnold, Anna Clavin, Jessie Everts, Chilah Brown, and Kathryn Graves are the members of the Minnesota Board of Marriage and Family Therapy and are sued in their official capacities. The Board of Marriage and Family Therapy is the licensing board authorized under the Counseling Restriction to impose discipline—including suspension and revocation of a license—on the mental health practitioners and professionals it licenses.

13. Defendant Jennifer Mohlenhoff is the Executive Director of the Minnesota Board of Marriage and Family Therapy and is sued in her official

capacity. As Executive Director, Defendant Mohlenhoff has authority under Minn. Stat. § 214.103 to determine whether a complaint alleging a violation of the Counseling Restriction is jurisdictional and warrants investigation, forward such complaints to the Attorney General's designee and, after consultation with the Attorney General's designee and with the concurrence of a second board member, initiate contested-case proceedings that may result in disciplinary action.

## STATEMENT OF FACTS

### *Plaintiff CCFA and Its Members*

14. Plaintiff CCFA is an unincorporated association of Christian licensed mental health practitioners and professionals in Minnesota.

15. CCFA's mission is to honor God and to advocate for the constitutional rights and freedoms of Christian counselors.

16. CCFA was formed for the specific purpose of pursuing legal and civic action to protect the constitutional rights of Christian licensed counselors in Minnesota, including their First Amendment speech and religious rights.

17. Each member of CCFA holds an active license to practice as a mental health professional or practitioner in Minnesota issued by one of Minnesota's health-related licensing boards or is pursuing such licensure.

18. CCFA's membership includes licensees of each of the Minnesota health-related licensing boards whose Executive Directors and Board Members are named as Defendants here: the Board of Behavioral Health and Therapy, and the Board of Marriage and Family Therapy.

19. Every member of CCFA is a Christian who has affirmed the CCFA Statement of Faith, a true and correct copy of which is attached hereto as Exhibit A.

20. Every member of CCFA has affirmed CCFA's faith-based Statement of Human Identity, a true and correct copy of which is attached hereto as Exhibit B.

21. In affirming the CCFA Statement of Human Identity, CCFA members affirm several important religious beliefs relevant to this matter, including the religious beliefs that "God created human beings uniquely as male and female as part of the divinely created order and that this biologically sexed difference is foundational for human identity"; that "[h]uman flourishing depends on recognizing these God-honoring identities"; and that "marriage is a divine union between one man and one woman."

22. Every member of CCFA has affirmed that they believe that Christian counselors should be permitted to practice counseling in alignment with their Christian faith and biblical principles.

23. Every member of CCFA seeks to practice counseling in alignment with their deeply held Christian religious beliefs, including the Christian religious beliefs set forth in the CCFA Statement of Faith and the CCFA Statement of Human Identity.

24. All members of CCFA who are mental health professionals or practitioners licensed by either the Minnesota Board of Marriage and Family Therapy or the Minnesota Board of Behavioral Health and Therapy (collectively, the "CCFA Licensed Counselor Members") engage in talk therapy with their counseling clients—that is, they engage in therapy that consists entirely of having conversations with their counseling clients.

25. Many CCFA Licensed Counselor Members—including CCFA's two Co-Presidents, Dan Schmoyer and Amber Langford—currently counsel clients who are minors or vulnerable adults and are directly and negatively affected by the Counseling Restriction and its chilling effect on counselor speech.

26. Dan Schmoyer is a Co-President of CCFA, a counselor licensed by the Minnesota Board of Behavioral Health and Therapy, the founder and owner of two Christian counseling practices, and a practicing counselor in Minnesota.

27. Amber Langford is a Co-President of CCFA. She is a Licensed Marriage and Family Therapist licensed by the Minnesota Board of Marriage and Family Therapy and has practiced counseling in Minnesota since 2011.

28. The interests CCFA seeks to protect through this action—its members' First Amendment right to engage in talk therapy without viewpoint-based restriction by the State—are germane to CCFA's stated purpose of protecting the constitutional speech and religious rights of Christian licensed counselors in Minnesota.

29. CCFA Licensed Counselor Members would have standing to sue in their own right because they are licensed by the boards whose Executive Directors and Members are Defendants, they engage in the talk therapy regulated by the Counseling Restriction, and they have suffered, and continue to suffer, ongoing First Amendment injury caused by the Counseling Restriction's chilling effect on their counseling speech.

30. Neither the claims asserted nor the prospective declaratory and injunctive relief requested requires the participation of CCFA's individual members in this lawsuit.

***CCFA Counselors Provide Faith-Informed Counseling at Their Clients' Direction***

31. CCFA Licensed Counselor Members, including Mr. Schmoyer and Ms. Langford, provide talk therapy to clients who seek them out for counseling. Talk therapy consists entirely of having conversations with counseling clients.

32. CCFA Licensed Counselor Members use no aversive or coercive techniques.

33. Like all CCFA Licensed Counselor Members, Mr. Schmoyer and Ms. Langford are Christians. Their Christian faith informs every aspect of the counseling they provide.

34. Like many other CCFA Licensed Counselor Members, Mr. Schmoyer and Ms. Langford entered the professional of mental-health counseling to not only help others but also to serve God. Their professional life is motivated by their religious beliefs.

35. Approximately 85 to 90 percent of Mr. Schmoyer's and Ms. Langford's clients are themselves Christians, and most of those clients seek out the

counselor precisely because they want counseling shaped by a shared Christian faith.

36. At intake, Mr. Schmoyer and Ms. Langford ask each client whether the client wishes to have faith integrated into the counseling, and they respect the client's choice.

37. Counseling goals are set by the client, not the counselor. The client identifies the concerns and objectives. Although the counselor may help inform the client's goals or surface issues the client has not yet seen, the counselor never dictates the goals.

38. Counseling provided by CCFA Licensed Counselor Members is voluntary. Clients confirm that they are choosing to participate and are not being forced, and they remain free to terminate counseling at any time, for any reason or no reason.

39. The sincerely held religious convictions of CCFA Licensed Counselor Members, including Mr. Schmoyer and Ms. Langford, prevent them from helping a client pursue a goal that contradicts their Christian faith.

40. For example, CCFA Licensed Counselor Members including Mr. Schmoyer and Ms. Langford cannot, without violating their Christian faith, help a client pursue a goal that contradicts their deeply held religious belief that each

person's sex, male or female, is a God-given gift that cannot be changed. In addition, for a CCFA Licensed Counselor Member like Mr. Schmoyer or Ms. Langford to affirm or encourage same-sex sexual relations would violate their deeply held religious beliefs.

***CCFA Counselors Engage in Talk Therapy with Willing Minor and Vulnerable-Adult Clients Regarding Gender Confusion and Same-Sex Attraction***

41. CCFA Licensed Counselor Members engage in talk therapy with willing minor and vulnerable-adult clients regarding gender confusion and unwanted same-sex attraction.

42. For example, both Mr. Schmoyer and Ms. Langford have counseled minors and adults concerning gender confusion. Mr. Schmoyer has also counseled minors and adults concerning unwanted same-sex attraction.

43. Before the Counseling Restriction was enacted, CCFA Licensed Counselor Members including Mr. Schmoyer and Ms. Langford felt free to engage willing clients in open dialogue on these subjects, including helping willing minor clients who wished to live in alignment with their biological sex as opposed to rejecting their sex.

44. In Ms. Langford's and Mr. Schmoyer's clinical experience treating gender confusion, and in Mr. Schmoyer's clinical experience treating unwanted

same-sex attraction, gender confusion and unwanted same-sex attraction often have roots in past trauma or in unmet emotional and relational needs, and processing those underlying dynamics through talk therapy can produce beneficial shifts.

45. When Ms. Langford works with a client experiencing gender confusion, she gently tries to identify what emotional dynamic or function the confusion may be serving and then attempts to understand that function and address it.

46. For example, she currently counsels a young female client whose disdain for femininity is tied to a difficult relationship with the client's mother and who, as that relationship has begun to heal, has independently reduced her use of testosterone and has become more open to femininity.

47. Were they free to do so, Ms. Langford and Mr. Schmoyer would help willing minor clients explore the root causes of gender confusion and would support and even celebrate clients who choose to detransition or to live in alignment with their biological sex.

48. Mr. Schmoyer continues to have with adult clients the very conversations about unwanted same-sex attraction that the Counseling Restriction prevents him from having with minor clients on the same topic.

***Minn. Stat. § 214.078 - the Counseling Restriction***

49. The Counseling Restriction, Minn. Stat. § 214.078, was enacted in April 2023.

50. By its terms, the Counseling Restriction applies to "mental health practitioner[s]" and "mental health professional[s]," as those terms are defined by Minn. Stat. § 245I.02, subdivs. 26–27 (cross-referencing Minn. Stat. § 245I.04, subdivs. 2 and 4), with respect to counseling of minors and vulnerable adults.

51. The Counseling Restriction prohibits any practice that "seeks to change an individual's sexual orientation or gender identity," including "efforts to change behaviors or gender expressions or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same gender."

52. At the same time, the Counseling Restriction expressly permits counseling that provides "acceptance, support, and understanding" of an individual or that "facilitates an individual's coping, social support, and identity exploration and development," as well as counseling that provides "assistance to an individual undergoing gender transition." Minn. Stat. § 214.078, subdiv. 1(b).

53. A violation of the Counseling Restriction constitutes unprofessional conduct subject to disciplinary action by the relevant licensing board, including discipline up to and including the loss of a professional license.

54. In their clinical experience, Ms. Langford and Mr. Schmoyer have come to understand that talk therapy—conversations in the counseling room—aimed at resolving a willing client's gender confusion by helping them live in alignment with their sex and develop comfort with their physical body can greatly benefit the client's mental and emotional wellbeing. In addition, Mr. Schmoyer, who has experience working with clients seeking to reduce unwanted same-sex attraction, has come to understand that talk therapy aimed at helping a willing client reduce unwanted same-sex attraction can greatly benefit the client's mental and emotional wellbeing.

55. There is no definitive evidence that counseling-room conversations with a willing client aimed at helping the client reduce unwanted same-sex attraction or live in alignment with their sex and develop comfort with their physical body, when those goals are set by the client, pose a risk of harm to the client. *See Chiles v. Salazar*, 116 F. 4th 1178, 1240–44 (10th Cir. 2024) (Hartz, J., dissenting) (discussing lack of studies demonstrating harm from conversion therapy; noting the absence of studies that focus specifically on talk therapy for a minor provided by a licensed mental-health professional).

56. The English National Health Service ("NHS") commissioned the largest-ever review of transgender health care, led by Dr. Hilary Cass, former President of the Royal College of Pediatrics. *The Cass Review damns England's*

*youth-gender services*, The Economist, Apr. 10, 2024, https://www.economist.com/britain/2024/04/10/the-cass-review-damns-englands-youth-gender-services. Based on that review, the NHS chose to limit medical treatment of minors to assist in gender transitions only to scientific studies designed to test the effectiveness of those treatments. *See* Azeen Ghorayshi, *Youth Gender Medications Limited in England, Part of Big Shift in Europe*, N.Y. Times, Apr. 9, 2024, https://www.nytimes.com/2024/04/09/health/europe-transgender-youth-hormone-treatments.html. Among other things, the Cass Review concluded that youth transgender medicine is "an area of remarkably weak evidence," and that "we have no good evidence on the long-term outcomes of interventions to manage gender-related distress." *Hillary Cass, The Cass Review: Independent Review of Gender Identity Services for Children and Young People: Final Report* 13 (April 2024), https://webarchive.nationalarchives.gov.uk/ukgwa/20250310143933/https://cass.independent-review.uk/home/publications/final-report/. The Cass Review also concluded that "the evidence does not adequately support the claim that gender-affirming treatment reduces suicide risk." *Id.* at 187.

57. There is increasing evidence that subjecting children to cross sex-hormones and life-altering procedures as "affirmation only" treatments for gender confusion poses serious health risks. For example, the use of puberty blockers in adolescents suffering from gender dysphoria create risks of compromised bone

density, reduced height gain, and reduced psychological functioning. *Id.* at 178–79. In addition, the Cass Review concluded that "brain maturation may be temporarily or permanently disrupted by the use of puberty blockers, which could have a significant impact on the young person's ability to make complex risk-laden decisions, as well as having possible longer term neuropsychological consequences." *Id.* at 178. These facts indicate that an "affirmation only" approach to gender confusion in minors—the viewpoint mandated by the Counseling Restriction—constitutes dangerous medical experimentation driven by ideology, not science.

***The Counseling Restriction Has Chilled CCFA Counselors' Protected Speech***

58. The Counseling Restriction has directly affected the practices and counseling-room speech of CCFA Licensed Counselor Members including Mr. Schmoyer and Ms. Langford.

59. Because the Counseling Restriction prohibits any practice seeking to change gender identity or sexual orientation, including efforts to change behaviors or gender expression, and because those statutory terms are not defined by the statute and are vague, CCFA Licensed Counselor Members including Mr. Schmoyer and Ms. Langford are uncertain which of their words and what

counseling-room conversations might expose them to a complaint, an investigation, and disciplinary action under the statute.

60. Due to the threat of enforcement and to avoid the risk of professional discipline, CCFA Licensed Counselor Members feel compelled to engage in self-censorship and curtail the messages that they express to minor and vulnerable-adult clients regarding the topic of gender identity and same-sex attraction.

61. Due to the threat of enforcement and to avoid the risk of professional discipline, Mr. Schmoyer and Ms. Langford engage in self-censorship and curtail the messages that they express to minor clients regarding the topic of gender identity. For the same reason, Mr. Schmoyer also engages in self-censorship and curtails the messages that he expresses to minor clients regarding the topic of sexual orientation, and he engaged in self-censorship and curtailed messages he expressed on the topics of gender identity and sexual orientation to a vulnerable-adult client.

62. Mr. Schmoyer began counseling one client at age fifteen for unwanted same-sex attraction and gender-identity issues. Before the Counseling Restriction, Mr. Schmoyer had discussed with that client identity, the role of faith in identity, and the social and decision-making influences shaping the client's sense of self.

63. After the Counseling Restriction took effect, and after the same client (by then a vulnerable adult owing to a traumatic brain injury) began considering hormone replacement therapy, Mr. Schmoyer felt compelled to filter what he said and to withhold thoughts and concerns that he otherwise would have shared, which limited the effectiveness of his counseling.

64. Mr. Schmoyer likewise refrains from speaking about certain factual information with minors—such as research indicating that the substantial majority of children who experience gender dysphoria resolve it as they grow up—for fear that doing so might be perceived as an effort to change the client's gender identity in violation of the Counseling Restriction.

65. Ms. Langford, too, has become more guarded in sessions with minor clients. When helping a minor client connect emotional history to gender confusion, she no longer speaks as plainly or freely as she did before the Counseling Restriction was enacted. Instead of making direct observations about those connections, she addresses potential root causes while continuing to discuss the client's gender confusion, hoping the client will recognize and consider the connection independently.

66. Ms. Langford fears that expressing discomfort with a request to use pronouns inconsistent with a client's biological sex or helping a client identify the

root causes of gender confusion could be construed as a prohibited change effort and reported as a violation of the Counseling Restriction.

67. Due to the threat of enforcement of the Counseling Restriction, Ms. Langford has been prevented from discussing information with minor clients about the potential risks and long-term consequences associated with gender-transition interventions that other professionals may be recommending. If the Counseling Restriction were not in place, she would help those clients thoughtfully explore and evaluate all relevant information related to those significant decisions. While she does not provide medical advice and clients are free to make their own choices, she believes they deserve the opportunity to consider both the potential benefits and the potential risks of any proposed treatment.

68. Ms. Langford currently counsels a minor client who is detransitioning—taking progressively less testosterone and moving toward living in alignment with her sex. Although Ms. Langford believes that progress is good for the client's body and mental health, she refrains from affirming or celebrating that progress with the client for fear of running afoul of the Counseling Restriction.

69. The fear of being reported, investigated, or disciplined under the Counseling Restriction forces CCFA licensed-counselor members, including Mr.

Schmoyer and Ms. Langford, to self-censor and withhold speech that would be loving, respectful, and grounded in their clinical training and their Christian faith.

70. Absent injunctive relief, CCFA Licensed Counselor Members including Mr. Schmoyer and Ms. Langford will continue engaging in self-censorship with existing minor clients and any new minor or vulnerable-adult clients they take on.

71. If the Counseling Restriction were enjoined, Mr. Schmoyer and Ms. Langford would resume the full range of speech they previously used with willing minor and vulnerable-adult clients, including openly exploring the root causes of gender confusion and unwanted same-sex attraction and supporting and celebrating clients who choose to detransition or to live in alignment with their biological sex.

## CAUSES OF ACTION

### CLAIM ONE

### Violation of the First and Fourteenth Amendments to the United States Constitution – Viewpoint Discrimination (42 U.S.C. § 1983)

72. Plaintiff CCFA realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

73. 42 U.S.C. § 1983 provides a cause of action against every person who, under color of any statute of any State, subjects, or causes to be subjected, any

citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

74. Each Defendant is a Minnesota state official charged with the enforcement and administration of Minn. Stat. § 214.078, and each Defendant acts under color of state law in enforcing the Counseling Restriction against the licensed counselors—including CCFA Licensed Counselor Members—whom the relevant board licenses and regulates.

75. The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits government from abridging the freedom of speech.

76. Viewpoint discrimination, the regulation of speech based on the speaker's perspective or position on an issue, is an egregious form of content discrimination and is presumptively unconstitutional. The government may not forbid speech that expresses one view on a particular issue while permitting speech that expresses the opposing view.

77. The talk therapy provided by CCFA Licensed Counselor Members is pure speech. It consists entirely of conversations between the counselor and the client and nothing more. CCFA Licensed Counselor Members use no aversive or coercive techniques.

78. The Counseling Restriction is a viewpoint-based regulation of CCFA Licensed Counselor Members' protected speech. It expressly permits CCFA Licensed Counselor Members to engage in talk therapy that provides "acceptance, support, and understanding" of, or that "facilitates", a minor or vulnerable-adult client's same-sex attraction or rejection of the client's sex, while prohibiting CCFA Licensed Counselor Members—on pain of disciplinary action including the potential loss of their professional license—from engaging in talk therapy that seeks to help a willing minor or vulnerable-adult client pursue the opposite goals of reducing unwanted same-sex attraction or living in alignment with the client's sex. It is thus presumptively unconstitutional under *Chiles v. Salazar.*

79. The Counseling Restriction therefore forbids CCFA Licensed Counselor Members from engaging in certain talk-therapy conversations on the basis of the viewpoint expressed by the counselor on questions of sexual orientation and gender identity.

80. The Counseling Restriction regulates CCFA Licensed Counselor Members' speech as speech. It does not regulate any non-expressive conduct, and it does not regulate speech that is merely incidental to conduct. The very same conversations that the Counseling Restriction forbids CCFA Licensed Counselor Members to have with minor and vulnerable-adult clients could lawfully be had by unlicensed persons.

81. The Counseling Restriction does not further a compelling governmental interest and is not narrowly tailored to achieve such an interest.

82. The threat of enforcement of the Counseling Restriction has caused, and continues to cause, CCFA Licensed Counselor Members—including Mr. Schmoyer and Ms. Langford—to self-censor in their talk-therapy sessions with minor and vulnerable-adult clients. CCFA Licensed Counselor Members refrain from speaking on subjects of gender identity and same-sex attraction in ways that they otherwise would, in order to avoid the risk of a complaint, an investigation, and disciplinary action under the statute.

83. CCFA Licensed Counselor Members face a credible threat of enforcement of the Counseling Restriction if they engage in the talk-therapy speech with minor and vulnerable-adult clients that the statute forbids.

84. The Counseling Restriction's ongoing deprivation of CCFA members' First Amendment freedoms inflicts irreparable injury every day the statute remains in force.

85. By virtue of the threat of enforcement of Minn. Stat. § 214.078 with respect to CCFA Licensed Counselor Members' talk therapy with minor and vulnerable-adult clients, Defendants have deprived, and continue to deprive, CCFA Licensed Counselor Members of the right to freedom of speech secured by

the First Amendment to the United States Constitution as incorporated against the States through the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

**CLAIM TWO**

**Violation of the First and Fourteenth Amendments to the United States Constitution – Free Exercise of Religion (42 U.S.C. § 1983)**

86. Plaintiff CCFA realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

87. The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." These clauses apply to the States via the Fourteenth Amendment.

88. CCFA members consider their counseling practices to be inextricably linked to their faith. Many CCFA members see their counseling practice as a religious ministry or calling.

89. CCFA Licensed Counselor Members do not provide counseling that assists clients in attaining goals that conflict with their sincerely held religious beliefs, nor do they otherwise counsel clients in any way that conflicts with their sincerely held religious beliefs, including the shared religious beliefs expressed in the CCFA Statement of Faith (Ex. A), and the CCFA Statement of Human Identity (Ex. B).

90. As counselors whose professional mission is rooted in their Christian faith, CCFA Licensed Counselor Members' approach to talk therapy sometimes conflicts with the requirements of the Counseling Restrictions.

91. Many clients specifically seek out CCFA counselors specifically because they share CCFA members' Christian faith, and because they desire faith-based counseling, including on issues of sexual orientation and gender identity. CCFA members' clients sometimes come to counseling with the personal goal of reducing unwanted same-sex attraction or dealing with gender confusion by aligning their lives with their sex.

92. Providing talk therapy to such minor or vulnerable-adult clients in accordance with their sincerely held religious beliefs and assisting such clients in achieving those goals would violate the Counseling Restriction, risking professional discipline and loss of licensure.

93. CCFA Licensed Counselor Members want and intend to engage in talk therapy with minor and vulnerable-adult clients in the future on issues of sexual orientation and gender identity in full alignment with their sincerely held religious beliefs, but they cannot presently do so without violating the Counseling Restriction and risking professional discipline and loss of licensure.

94. The Counseling Restriction interferes with CCFA Licensed Counselor Members' ability to integrate their faith and sincerely held religious beliefs about sexual orientation and gender into their counseling practice.

95. The Counseling Restriction forces CCFA Licensed Counselor Members who want to counsel minor and vulnerable-adult clients on issues of gender identity or sexual orientation to choose between violating their sincerely held religious beliefs (by either engaging in talk therapy that contradicts their faith or turning away clients seeking faith-based assistance to live in accordance with God's plan) or violating the Counseling Restriction and risking professional discipline and loss of licensure.

96. The Counseling Restriction thus impermissibly targets and substantially burdens CCFA Licensed Counselor Members' faith and sincerely held religious beliefs.

97. By enforcing penalties against licensed counselors who engage in talk therapy that aligns with the traditional Christian viewpoints on sexuality and gender while allowing talk therapy that rejects the traditional Christian viewpoints on those topics, the Counseling Restriction impermissibly targets and substantially burdens CCFA Licensed Counselor Members' faith and sincerely held religious beliefs.

98. The Counseling Restriction does not further a compelling governmental interest and is not narrowly tailored to achieve such an interest.

99. The Counseling Restriction is causing continuing and substantial, irreparable injury to CCFA members by preventing them from engaging in talk therapy in a manner consistent with their sincerely held religious beliefs and their faith-based professional missions.

**CLAIM THREE**

**Violation of the Right to Due Process Guaranteed by the Fourteenth Amendment to the United States Constitution – Vagueness (42 U.S.C. § 1983)**

100. Plaintiff CCFA realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

101. The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law."

102. Due process of law requires that when a State passes a law purporting to prohibit certain speech, it must provide adequate notice of the particular speech that is proscribed by the law.

103. In the case of the Counseling Restriction, this adequate notice requirement must be stringently applied because the Counseling Restriction interferes with the right of free speech.

104. Substantial consequences attach to violations of the Counseling Restriction. Nevertheless, the Counseling Restriction is so vaguely drafted that it violates fundamental due process and is unconstitutional.

105. The Counseling Restriction is unconstitutionally vague because it provides no standards or guidelines defining the line between speech that permissibly provides "[a]cceptance, support, and understanding for the facilitation of an individual's coping, social support, and identity exploration and development" and speech that unlawfully seeks to "change" that person's "sexual orientation or gender identity."

106. The Counseling Restriction likewise fails to adequately define other relevant terms, such as what it means to "facilitate" a client's "coping" or "social support."

107. The Counseling Restriction's prohibition on seeking to "change an individual's . . . gender identity" also fails to provide adequate standards or guidelines to govern the actions of those authorized to bring enforcement actions because the term "gender identity" is undefined in the law, has no commonly accepted meaning, and is vague. On the contrary, there is widespread confusion about the meaning of the term. For example, there is no consensus regarding how many potential "identities" there are, whether "gender identity" exists on a

spectrum, whether and to what extent "gender identity" is merely based on a person's internal sense of identity, or how "gender identity" differs or relates to "gender expression."

108. Accordingly, an individual who is unhappy with or uncertain about his or her sense of "gender identity" may well wish the aid of a professional counselor. But what conversation will comprise permissible "development" of that individual's "gender identity," and what will be condemned as an unlawful effort to "change" the individual's "gender identity," is unknowable.

109. Similarly, the term "sexual orientation" is undefined in the law and is vague in practice, rendering the Counseling Restriction unconstitutionally vague. For example, there is no commonly accepted view as to what extent different "orientations" may overlap or blend from one to another, how many possible "orientations" there are, or whether or to what extent "sexual orientation" encompasses potential components such as sexual attraction, sexual behavior, and sexual identity.

110. Because the Counseling Restriction fails to define "sexual orientation," and because that term has no commonly accepted meaning, the Counseling Restriction leaves those authorized to bring enforcement actions free to do so based on their personal predilections, or for discriminatory purposes

including disapproval of the beliefs, viewpoint, or messages of a particular counselor.

111. The Counseling Restriction is further impermissibly vague because it prohibits any practice that "attempts . . . to change an individual's sexual orientation or gender identity" without providing any standards or guidelines as to whether this refers to the subjective intent of the client, or that of the counselor, again leaving unfettered discretion on this critical question to any person authorized to bring an enforcement action and inviting discriminatory enforcement.

112. The Counseling Restriction is also unconstitutionally vague because it prohibits any practice "that seeks to change an individual's sexual orientation or gender identity, including efforts to change behaviors or gender expressions . . .," but it does not define "gender expression" and provides no guidelines or information as to what "behaviors" a counselor may or may not help a client attempt to change. The Counseling Restriction also fails to define "identity exploration and development."

113. As a result of the vagueness of so many key statutory terms, almost any counseling conversation that relates to gender, intimate relationships, or sexuality could be accused of seeking to "change . . . sexual orientation or gender

identity." The failure of the Counseling Restriction to define key terms leaves those authorized to enforce the Counseling Restriction free to impose discipline based on their personal predilections, or for discriminatory purposes including disapproval of the beliefs, viewpoint, or messages of a particular counselor.

114. For these reasons, the Counseling Restriction is so vague that it deprives CCFA Licensed Counselor Members of their Due Process rights guaranteed by the Fourteenth Amendment.

115. The deprivation of these rights constitutes continuing, irreparable injury to CCFA Licensed Counselor Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christian Counselors Freedom Alliance respectfully requests that this Court enter judgment in its favor and against Defendants, and grant the following relief:

A. A declaratory judgment that Minn. Stat. § 214.078, as applied to counseling-room speech with minor and vulnerable-adult clients or prospective clients by CCFA members licensed by the Minnesota Board of Behavioral Health and Therapy or the Minnesota Board of Marriage and Family Therapy, violates the First Amendment to the

United States Constitution as incorporated against the States through the Fourteenth Amendment;

B. A declaratory judgment that Minn. Stat. § 214.078, as applied to counseling-room speech with minor and vulnerable-adult clients or prospective clients by CCFA members licensed by the Minnesota Board of Behavioral Health and Therapy or the Minnesota Board of Marriage and Family Therapy, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

C. A preliminary injunction, followed by a permanent injunction, prohibiting Defendant Keith Ellison, in his official capacity as Minnesota Attorney General, and his officers, agents, employees, successors in office, and persons acting in concert with him, from investigating, prosecuting, representing a licensing board in resolution efforts, or participating in contested-case proceedings under Minn. Stat. § 214.078 against CCFA members licensed by the Minnesota Board of Behavioral Health and Therapy or the Minnesota Board of Marriage and Family Therapy with respect to counseling-room speech with minor or vulnerable-adult clients or prospective clients;

D. A preliminary injunction, followed by a permanent injunction, prohibiting Defendants Landyn Prescott-Miles, Christopher Anderson, Bharati Acharya, Randy Anderson, Jacqueline Bluem, Sandy Clark, Derrick Crim, Amy Dols, Dina Williams, Roy Kammer, Corey Harland, Sarah Sirianni Driever, and Randy Stillday, in their official capacities as members of the Minnesota Board of Behavioral Health and Therapy, and Defendant Samantha Strehlo, in her official capacity as Executive Director of the Minnesota Board of Behavioral Health and Therapy, together with their officers, agents, employees, successors in office, and persons acting in concert with them, from investigating, forwarding for investigation or prosecution, initiating contested-case proceedings on, voting to impose discipline on, imposing discipline on, or otherwise enforcing Minn. Stat. § 214.078 against CCFA members licensed by the Minnesota Board of Behavioral Health and Therapy for counseling-room speech with minor or vulnerable-adult clients or prospective clients;

E. A preliminary injunction, followed by a permanent injunction, prohibiting Defendants Shonda Craft, Thad Shunkwiler, Adam Arnold, Anna Clavin, Jessie Everts, Chilah Brown, and Kathryn Graves in their official capacities as members of the Minnesota Board

of Marriage and Family Therapy, and Defendant Jennifer Mohlenhoff, in her official capacity as Executive Director of the Minnesota Board of Marriage and Family Therapy, together with their officers, agents, employees, successors in office, and persons acting in concert with them, from investigating, forwarding for investigation or prosecution, initiating contested-case proceedings on, voting to impose discipline on, imposing discipline on, or otherwise enforcing Minn. Stat. § 214.078 against CCFA members licensed by the Minnesota Board of Marriage and Family Therapy for counseling-room speech with minor or vulnerable-adult clients or prospective clients;

F. An award of Plaintiff's reasonable attorneys' fees, expenses, and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

G. That this Court issue the requested injunctive relief without a condition of bond or other security required of the Plaintiff; and

H. That this Court grant any other relief that it deems equitable and just in the circumstances.

Respectfully submitted this 27th day of August, 2026.

By: /s/ *Douglas G. Wardlow*

Douglas G. Wardlow
Minnesota Bar No. 0339544
Renee K. Carlson
Minnesota Bar No. 0389675
True North Legal
525 Park Street, Suite 460
St. Paul, Minnesota 55103
(612) 293-8172
dwardlow@truenorthlegal.org
rcarlson@truenorthlegalmn.org

*Counsel for Plaintiff Christian Counselors Freedom Alliance*

## DECLARATION UNDER PENALTY OF PERJURY

I, Dan Schmoyer, a citizen of the United States and a resident of the State of Minnesota, have reviewed the allegations of the foregoing Verified Complaint. As Co-President of Christian Counselors Freedom Alliance, I have personal knowledge of the allegations that relate to the organization, its membership, and its interests. I also have personal knowledge of the allegations that relate to me, my counseling practice, and my activities and experiences as a licensed counselor. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements concerning me, my counseling practice, and my activities and experiences as a licensed counselor, as well as the factual statements concerning Christian Counselors Freedom Alliance, its membership, and its interests are true and correct to the best of my knowledge.

Executed this 27th day of August, 2026, at St. Michael, Minnesota.

[signature]

Dan Schmoyer

## DECLARATION UNDER PENALTY OF PERJURY

I, Amber Langford, a citizen of the United States and a resident of the State of Minnesota, have reviewed the allegations of the foregoing Verified Complaint. As Co-President of Christian Counselors Freedom Alliance, I have personal knowledge of the allegations that relate to the organization, its membership, and its interests. I also have personal knowledge of the allegations that relate to me, my counseling practice, and my activities and experiences as a licensed counselor. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements concerning me, my counseling practice, and my activities and experiences as a licensed counselor, as well as the factual statements concerning Christian Counselors Freedom Alliance, its membership, and its interests are true and correct to the best of my knowledge.

Executed this 26 day of August, 2026, at Lake Shore, Minnesota.

Amber Langford
Amber Langford